1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

J.D.H., et al.,

                            Plaintiffs,

          v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT; SHERIFF DOUGLAS
GILLESPIE (individually and in his
official capacity as Sheriff of the Las
Vegas Metropolitan Police Department);
LAS VEGAS METROPOLITAN POLICE
DEPARTMENT OFFICER J. BARKER
(in his individual capacity); and LAS
VEGAS METROPOLITAN POLICE
DEPARTMENT OFFICER M.
PURCARO (in his individual capacity),

                          Defendants.

Case No. 2:13-cv-01300-APG-NJK

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

(Dkt. # 13)

16        Defendants move to dismiss the complaint. [Dkt. #13.]  For the reasons set forth below, I

17 grant the motion as to plaintiffs' Second, Third, Fifth, Sixth and Eighth Causes of Action, and

18 denies the motion as to plaintiffs' First, Fourth, and Seventh Causes of Action.  All claims against

19 Defendant Sheriff Douglas Gillespie are dismissed.

20       **I.**       **Background**

21        Plaintiff J.D.H. is a minor girl, and plaintiff Maria is her mother.  This case arises from an

22 incident in which a Chevrolet Avalanche ran over J.D.H.'s foot.  Taking plaintiffs' facts as true

23 for the instant motion, the relevant facts are set forth below. [Dkt. #1 ¶¶ 29–115]

24        J.D.H. was playing outside her house with other children when an ice cream truck arrived

25 on the street.  She and the other children crossed the street to the ice cream truck, which had

26 flashing lights and a stop sign attached while it served the children.  J.D.H.'s father, Inocente, was

27

28

1  driving in his car on the same street, headed back towards the house.  He stopped behind the ice

2  cream truck and waited to turn left into his driveway.

3  After buying ice cream, J.D.H. and her sister stood in front of the ice cream truck, waiting

4  to cross the street back towards the house.  A young man (the "driver") was driving the Chevrolet

5  Avalanche with a female passenger (the "passenger").  The Chevrolet came from behind the

6  father's car at a high rate of speed, which plaintiffs estimate to be around twice the posted speed

7  limit.  Instead of stopping behind Inocente's car, the Chevrolet passed it on the right and then

8  passed the ice cream truck on the left.  While passing the ice cream truck, the Chevrolet ran over

9  J.D.H.'s foot, knocking her to the ground and bloodying her foot.

10  The Chevrolet stopped, and its occupants exited the vehicle.  Inocente got out of his

11  vehicle and went to J.D.H.  The driver apologized, but the passenger became aggressive and

12  blamed J.D.H. for the accident.  One of the other children fetched Maria.  Maria called 9-1-1, but

13  was upset and passed the telephone to Inocente.  Inocente indicated he was not fluent in English,

14  and the 9-1-1 operator connected him with a Spanish-speaking interpreter.

15  Other people gathered at the scene.  After Inocente called the police, the Chevrolet drove

16  away.  Officers Barker and Purcaro arrived.  The officers could not understand Inocente because

17  neither officer spoke Spanish, and the officers did not request an interpreter.  The Chevrolet

18  driver and passenger returned to the scene on foot, and the passenger spoke with the officer in

19  English.  She initially told Officer Barker that she had been driving, but the driver eventually

20  admitted he had been.  The officers learned that the driver did not have a valid license, but they

21  did not verify any of the driver's information or check the Chevrolet's registration.  When Maria

22  and Inocente asked the officers to get the driver's information, the officers told them they could

23  not have it, and that the accident had been the parents' fault.

24  Tempers escalated, and the passenger began yelling at Maria in Spanish; Maria responded

25  in Spanish.  Maria was carrying the injured J.D.H. in her arms.  Officer Barker approached Maria

26  and pushed her with his forearm, causing her to take three steps back.  Officer Barker told Maria

27

28

1   to "shut up," and that the accident was her fault.  Maria cried and returned with J.D.H. to their
2   residence.

3       Maria and J.D.H. were helped into an ambulance and left the scene.  Inocente's nephew
4   began to interpret for Inocente to the officers.  Inocente asked for the driver's information from
5   the officers, but the officers refused to provide the information, and prohibited Inocente from
6   obtaining that information.  The officers did not prepare a report, and told Inocente that if they
7   wrote a report it would show J.D.H. at fault.  Officer Barker mocked the family's Hispanic
8   accent.  The driver and passenger left without giving any information to Inocente or the officers.

9       Plaintiffs allege that the officers treated J.D.H. and Maria differently they treat non-
10  Hispanics, and because they could not speak English. [Dkt. #1 ¶¶ 87, 88.]  Plaintiffs allege that
11  officers check, collect, report, and provide drivers' information in accidents that involve non-
12  Hispanic and English-speaking children.  Nevada law requires officers at the scene of an accident
13  to check the registration of vehicles involved and to file a report with the Department of Motor
14  Vehicles ("DMV").  Nevada law also requires drivers involved in accidents to provide
15  information to the other persons involved. [Dkt. #1 ¶¶ 133–34.]  Plaintiffs allege the officers
16  violated those state laws, and that the officers violated the Plaintiffs' Constitutional rights.

17      **II.    Legal Standards**

18          **A.  Motion to Dismiss**

19      A properly pleaded complaint must provide a "short and plain statement of the claim
20  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*,
21  550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands
22  more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of
23  action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to rise
24  above the speculative level." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a
25  complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."
26  *Iqbal*, 556 U.S. at 696 (internal quotation marks and citations omitted).

27

28

3

1    District courts must apply a two-step approach when considering motions to dismiss. *Id.*
2  at 679. First, the court must accept as true all well-pleaded factual allegations and draw all
3  reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*,
4  724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same
5  assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*,
6  724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by
7  conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

8    Second, the court must consider whether the factual allegations in the complaint allege a
9  plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges
10 facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged
11 misconduct. *Id.* at 663.

12               **B.  Leave to Amend**

13   Courts should freely grant leave to amend when "justice so requires." Fed. R. Civ. P.
14 15(a)(2). In so determining, courts consider: "(1) bad faith, (2) undue delay, (3) prejudice to the
15 opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his
16 complaint." *Sisseton–Wahpeton Sioux Tribe of Lake Traverse Indian Reservation, North Dakota*
17 *and South Dakota v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). "Rule 15's policy of
18 favoring amendments to pleadings should be applied with extreme liberality." *United States v.*
19 *Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (internal quotation marks omitted). However, futility of
20 amendment can by itself justify the denial of a motion for leave to amend. *See, e.g., Bonin v.*
21 *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

22               **C.  Nevada Law Regarding Driver Information**

23   NRS 484E.060(1) requires officers at the scene of a car accident to, among other things,
24 check the validity of each vehicle's registration. NRS 484E.110 requires officers to prepare a
25 report in the event of a vehicle accident resulting in bodily injury, and to submit a copy of this
26 report to the Department of Public Safety, who in turn shall submit a copy to the Department of
27 Motor Vehicles. Finally, NRS 484E.030 requires the driver of any vehicle involved in an

28

4

1    accident resulting in injury to provide personal information, a driver's license, and the vehicle's

2    registration upon request.

3    **III.**    **Analysis**

4    **A. Claims Against Sheriff Gillespie**

5    As an initial matter, Sheriff Gillespie is not a proper defendant in this case, and he is

6    dismissed from all counts. Individuals who work for governmental entities can be named as

7    defendants in both their official and personal capacities. However, suing an individual in his

8    official capacity is the equivalent of suing the entity of which he is a part. *Larez v. City of Los*

9    *Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Dismissal of an official is proper where a plaintiff

10    names as defendants both the official in his official capacity and the entity. *Center for Bio-Ethical*

11    *Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Plaintiffs

12    have named as a defendant Las Vegas Metropolitan Police Department ("LVMPD"), so Sheriff

13    Gillespie in his official capacity is a redundant defendant and should be dismissed.

14    Additionally, Plaintiffs have not alleged that Sheriff Gillespie participated in or directed

15    the alleged violations, or that he knew of the violations and failed to act to prevent them. *See*

16    *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). Sheriff Gillespie's

17    authority over operations at LVMP does not alone make plausible his personal participation in the

18    alleged violations. Thus, the personal-capacity claims against Sheriff Gillespie are also

19    dismissed. *See Iqbal*, 556 U.S. at 679. However, I grant Plaintiffs leave to file an amended

20    complaint with additional factual allegations against Sheriff Gillespie in his individual capacity,

21    should such facts exist.

22    **B. First Cause of Action: Equal Protection**

23    To state a claim for violation of equal protection, a plaintiff must allege that: (1) the

24    defendant treated the plaintiff differently from others similarly situated; (2) this unequal treatment

25    was based on an impermissible classification; (3) the defendant acted with discriminatory intent

26    in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory

27    classification. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("must show that the

28

1   defendants acted with an intent or purpose to discriminate against plaintiff based on membership

2   in a protected class"); *Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004); *Van*

3   *Pool v. City & Cnty. of San Francisco*, 752 F. Supp. 915, 927 (N.D. Cal. 1990) (must prove

4   purposeful discrimination by demonstrating that plaintiff "receiv[ed] different treatment from that

5   received by others similarly situated," and that the treatment complained of was under color of

6   law).

7       Plaintiffs' Complaint pleads the first and fourth elements. Plaintiffs allege that LVMPD

8   checks, collects, reports, and provides information regarding accidents. Plaintiffs suggest that

9   LVMPD officers usually do not prohibit parties to an accident from exchanging driver

10  information. They bolster this assertion with references to Nevada statutes that require drivers to

11  exchange such information. According to the Complaint, Officers Barker and Purcaro did not

12  check, collect, report, or provide the required information. Further, they actively prevented

13  Plaintiffs from obtaining the Chevrolet driver's information. Plaintiffs suffered injury because

14  they were unable to bring suit against the driver for J.D.H.'s medical expenses. These allegations

15  make plausible that the officers treated Plaintiffs differently from others similarly situated, and

16  that Plaintiffs suffered damages as a result.

17      Harder to determine is whether Plaintiffs have sufficiently pleaded the second and third

18  elements of an equal protection violation. Plaintiffs must plead facts that make plausible a

19  discriminatory animus, and that the different treatment was based on that animus. Plaintiffs

20  allege that Defendants did not adequately communicate with Plaintiffs or any Spanish-speaking

21  witness at the scene. [Dkt. #1 ¶68–74.] Additionally, plaintiffs allege that Officer Barker was

22  aggressive and mocked their Hispanic accents. [Dkt. #1 ¶106.] These allegations, coupled with

23  the officers' apparent disregard for Nevada statutes, are more than bald legal conclusions. At this

24  stage, plaintiffs are not required to prove the entirety of their case. Plaintiffs have sufficiently

25  pleaded the elements of an equal protection violation so as to survive the instant motion to

26  dismiss.

27

28

1

## C. Fourth Cause of Action: Title VI

2   Title VI provides that "[n]o person in the United States shall, on the ground of race, color,

3   or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

4   discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.

5   § 2000d. "To state a claim for damages under 42 U.S.C. § 2000d et seq., a plaintiff must allege

6   that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is

7   receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439,

8   1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v.*

9   *Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). Additionally, a private

10  individual making a claim under Title VI must allege intentional discrimination. *Alexander v.*

11  *Sandoval*, 532 U.S. 275, 280–81 (2001) ("[Section] 601 prohibits only intentional

12  discrimination.") (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978)). Language-

13  based discrimination can constitute a form of national-origin discrimination under Title VI.

14  *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1116–17 (9th Cir. 2009) (citing *Lau*

15  *v. Nichols*, 414 U.S. 563, 568 (1974) *abrogated on other grounds by Sandoval*, 532 U.S. 275

16  (2001)) ( "discrimination against LEP individuals was discrimination based on national origin in

17  violation of Title VI").

18  Plaintiffs allege that the LVMPD is a federally-assisted program. [Dkt. #1 ¶ 160]. They

19  allege that Defendants' failure to use an interpreter denied them meaningful access to LVMPD

20  services. [*Id.* at ¶ 163.] Finally, they allege that the officers intentionally denied them meaningful

21  access to LVMPD services because of their limited English proficiency. [Dkt. #1 at ¶¶ 160, 164.]

22  These allegations make out a plausible Title VI claim so as to survive the instant motion to

23  dismiss. *See Almendares v. Palmer*, 284 F. Supp. 2d 799 (N.D. Ohio, 2003).

24

## D. Second Cause of Action: Due Process

25  Plaintiffs claim that the officers' actions deprived them of the driver's information and a

26  potential lawsuit against the driver, and that this deprivation constitutes a due process violation.

27  Plaintiffs contend that they had a property interest in the driver's information and lawsuit.

28

7

1    To state a due process claim, a plaintiff must allege that "a state actor deprived [the

2  plaintiff] of a constitutionally protected life, liberty, or property interest." *Shanks v. Dressel*, 540

3  F.3d 1082, 1087 (9th Cir. 2008). Thus, Plaintiffs "must, as a threshold matter, establish that

4  [they] had a property right in [their] position." *See Koepping v. Tri-County Metro. Transp. Dist.*

5  *of Or.*, 120 F.3d 998, 1005 (9th Cir. 1997); *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir.

6  2005) ("To determine whether a plaintiff was deprived of property without due process of law in

7  violation of the fourteenth Amendment, [the court] must first identify the property interest

8  involved."). To "have a property interest in a benefit, a person ... must have more than an

9  abstract need or desire [and] more than a unilateral expectation of it. He must, instead, have a

10  legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

11    The Ninth Circuit has not addressed whether the victim of an automobile accident has a

12  property interest in information related to the accident and its potentially resulting lawsuit. *Austin*

13  *v. City of Montgomery* is an unpublished Eleventh Circuit case that dealt with similar facts.

14  *Austin* held that an Alabama statute that requires law enforcement officers to file a report after

15  investigating a motor vehicle accident did not create a due process-protected property interest in

16  the report. 353 Fed. Appx. 188, 190–91 (11th Cir. 2009) (not published). In *Austin*, a driver

17  involved in an accident sued the city when a police officer responding to the scene failed to

18  interview witnesses or file a written report, as required by Alabama statute. *Id.* at 189. The driver

19  alleged that this failure caused him to lose a subsequent lawsuit against the other driver in the

20  accident. *Id.* Affirming the district court's dismissal of the driver's due process claim, the

21  Eleventh Circuit held that the statute "imposes a purely procedural requirement upon an

22  investigating law enforcement officer to file a report ... and does not create any sort of

23  constitutionally protected liberty or property interest." *Id.* at 191.

24    *Stevens v. Webb*, a case from the Eastern District of New York, dealt with a similar claim.

25  2014 WL 1154246 (E.D.N.Y. 2014). In *Stevens*, a husband sued New York City, the NYPD, and

26  several NYPD officers for the officers' failure to preserve or record evidence relating to a car

27  accident in which his wife was killed by a drunk driver. *Id.* at *2. The husband argued that the

28

1  NYPD's failure to investigate the accident in accordance with New York's vehicle and traffic

2  laws resulted in the loss of evidence. *Id.* at \*3. The court rejected his procedural due process

3  claim, holding that the relevant state laws, which require police to report accidents that result in

4  injury, do "not convey an individual entitlement upon the victims of motor vehicle accidents," but

5  rather "to the public generally." *Id.* at \*5–6 (quoting *Harrington v. County of Suffolk*, 607 F.3d

6  31, 35 (2d Cir. 2010) (state traffic law was not sufficiently mandatory to create a constitutionally

7  protected property interest, and obligations ran to the public rather than to the individual)).

8  In the absence of any pertinent case law cited by Plaintiffs, I find these two cases

9  persuasive. I decline to create a property interest in another driver's information or a potential

10  lawsuit against that driver. Plaintiffs cite Nevada statutes that require they be given this

11  information. But similar to the statutes requiring police to file accident reports in *Austin* and

12  *Stevens*, the Nevada statutes convey an entitlement upon the public generally, and not upon the

13  plaintiffs individually. The defendant officers' alleged conduct may have been improper and

14  irresponsible, but it does not rise to the level of a constitutional deprivation of due process.

15  Accordingly, Plaintiffs' Second Cause of Action is dismissed with prejudice.

16  ### E.  Third Cause of Action: Excessive Force; Fifth Cause of Action:

17  ### Battery; Sixth Cause of Action: Assault

18  To state an excessive force claim, a plaintiff must allege that the force used was

19  objectively unreasonable under the circumstances. *Green v. City & Cnty. of San Francisco*, 751

20  F.3d 1039, 1049 (9th Cir. 2014) ("Under the Fourth Amendment, law enforcement may use

21  objectively reasonable force."). Use of force must be judged by the totality of the circumstances

22  based upon facts known to the officer at the time. *Graham v. Connor*, 490 U.S. 386, 396 (1990)

23  ("Determining whether the force used to effect a particular seizure is reasonable under the Fourth

24  Amendment requires a careful balancing of the nature and quality of the intrusion on the

25  individual's Fourth Amendment interests against the countervailing governmental interests at

26  stake."). Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that

27  police officers are often forced to make split-second judgments—in circumstances that are tense,

28

9

1   uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

2   situation." *Id.* at 396–97. "[N]ot every push or shove, even if it may later seem unnecessary in

3   the peace of a judge's chambers, constitutes excessive force." *Carter v. City of Fresno*, 2013 WL

4   3766525, at *3 (E.D. Cal. July 16, 2013) (citing *Graham*, 490 U.S. at 396–97) (dismissing

5   excessive force claim against officer who made hostile remarks and poked a man in the chest,

6   causing him to step back a few feet but not injuring him) .

7           To state a battery claim under Nevada law, a plaintiff must allege that (1) the actor

8   intended to cause harmful or offensive contact, and (2) such contact did occur. *Burns v. Mayer*,

9   175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, §§ 13, 18

10  (1965)).  To state an assault claim under Nevada law, a plaintiff must allege that the defendant (1)

11  intended to cause harmful or offensive physical contact or an imminent apprehension of such

12  contact, and (2) put the victim in apprehension of such contact. *Sandoval v. Las Vegas Metro.*

13  *Police Dep't*, 854 F. Supp. 2d 860, 882 (D. Nev. 2012) (citing Restatement (Second) of Torts §

14  21 (1965)) (reversed on other grounds).  Like an excessive force claim, battery and assault claims

15  against police officers also require proof of unreasonable force. *Carter*, 2013 WL 3766525 at *3.

16  Thus, to sustain claims of excessive force, battery, or assault, Plaintiffs' allegations must establish

17  that Officer Barker's use of force was objectively unreasonable under the circumstances.

18          Plaintiffs' allegations do not establish that Officer Barker's use of force was objectively

19  unreasonable.  Plaintiffs allege that Officer Barker pushed Maria with his forearm, causing her to

20  take three steps back. [Dkt. #28 ¶ 95.]  This use of force was objectively reasonable under the

21  circumstances.  *See Carter*, 2013 WL 3766525 at *3 (chest pokes were not unreasonable); *see*

22  *also Graham*, 490 U.S. at 397 (the reasonableness inquiry does not consider an officer's

23  "underlying intent or motivation").  Officer Barker intervened in a yelling match by pushing

24  Maria with his forearm. [*Id* ¶¶ 92–95.]  Like in Carter, the push caused Maria to take a few steps

25  back, but did not physically injure her.  No reasonable jury could find that Officer Barker's push

26  was objectively unreasonable under these circumstances.  Accordingly, Plaintiffs' Third, Fifth,

27  and Sixth Causes of Action are dismissed with prejudice.

28

1

**F.  Seventh Cause of Action: IIED**

2          To state a claim for intentional infliction of emotional distress in Nevada, a plaintiff must

3    allege: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for,

4    causing emotional distress, (2) … severe or emotional distress, and (3) actual or proximate

5    causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025–26 (Nev. 2000) (citing *Star v. Rabello*, 625

6    P.2d 90, 91–92, 125 (Nev. 1981).  Conduct is extreme and outrageous if it falls "outside all

7    possible bounds of decency and is regarded as utterly intolerable in a civilized community."

8    *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).  The Court determines whether the

9    defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but,

10   where reasonable people may differ, the jury determines whether the conduct was sufficiently

11   extreme and outrageous to result in liability. *Chehade Refai v. Lazaro*, 614 F.Supp.2d 1103, 1121

12   (D.Nev.2009); Restatement (Second) of Torts, § 46, cmt.h. (1965).

13          Reading the facts in the light most favorable to Plaintiffs, and drawing all reasonable

14   inferences in their favor, Plaintiffs have pleaded all of the elements of an IIED claim.  Plaintiffs

15   allege that Officer Barker intentionally or recklessly caused Plaintiffs "severe emotional distress

16   by his extreme and outrageous conduct of pushing [Maria] while holding [J.D.H.], who was

17   injured." [Dkt. #28 ¶ 194.]  Plaintiffs also allege that Officer Barker's conduct was extreme and

18   outrageous when he "yelled at [Maria] to 'shut up' and told her that it was her fault that the

19   [a]ccident occurred." *[Id.* at ¶ 96].  I decline at this stage in the proceedings to "determine,

20   considering prevailing circumstances, contemporary attitudes and [the appellant's] own

21   susceptibility, whether the conduct in question constituted extreme outrage." *Branda v. Sanford*,

22   637 P.2d 1223, 1227 (Nev. 1981) (suit alleging slander and intentional infliction of emotional

23   distress resulting from the respondent's verbal abuse of a patron in a casino).  I similarly decline

24   at this stage in the proceedings to assess the severity of Plaintiffs' distress. *Samuels v. We've Only*

25   *Just Begun Wedding Chapel, Inc.*, 2014 WL 1302047 (D. Nev. 2014).  Thus, Plaintiffs' Seventh

26   Cause of Action survives the instant motion to dismiss.

27

28

**G. Eighth Cause of Action: NEID**

In Nevada, NIED claims may be asserted only by bystander-plaintiffs. *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999). Nevada "did not expand the NIED cause of action itself to include an alternative to IIED where the defendant's extreme and outrageous conduct was merely negligent." *Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F. Supp. 2d 925, 935 (D. Nev. 2010) (discussing *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995)). Instead, "emotional distress can be an element of the damage sustained" in a negligence action by a victim-plaintiff. *Shoen*, 896 P.2d at 477. In *Kennedy*, this court stated:

> [T]o recover parasitic damages for emotional harm based on a simple negligence claim, a plaintiff must prove cognizable harm separate from the emotional harm itself, whereas a putative NIED claim that mirrors an IIED claim in all aspects but mens rea would permit recovery based on emotional harm alone. No such cause of action exists except in Hawai'i.

727 F. Supp. 2d at 935. Yet, this is exactly how Plaintiffs have pleaded their NIED claim. [Dkt. #28 at ¶ 25 ("BARKER negligently caused MARIA and [J.D.H.] to suffer severe emotional distress by his extreme and outrageous conduct of pushing MARIA while she held [J.D.H.], who was injured, in her arms.") They cannot recover based on an NIED claim that merely mirrors their IIED claim in all aspects but mens rea.

Plaintiffs' NIED claim is more properly a straightforward negligence claim with emotional distress damages. However, they have not alleged a cognizable harm separate from their alleged emotional harm. Thus, Plaintiffs fail to state damages that support such a negligence claim. Accordingly, Plaintiffs' Eighth Cause of Action is dismissed with prejudice.

IT IS THEREFORE ORDERED THAT Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiffs' Second, Third, Fifth, Sixth and Eighth Causes of Action are dismissed. Plaintiffs may proceed with their First, Fourth, and Seventh Causes of Action.

IT IS FURTHER ORDERED THAT all claims against Sheriff Douglas Gillespie are dismissed. Plaintiffs shall have 30 days from entry of this Order to file a Second Amended

1  Complaint asserting factual allegations and claims against Sheriff Gillespie in his individual
2  capacity, should such facts exist.

3       DATED THIS 1st day of August, 2014.

4
5                                     _____

6                                   ANDREW P. GORDON
                                 UNITED STATES DISTRICT JUDGE

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28