**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| J.D.H. and MARIA HERNANDEZ, | Case No. 2:13-CV-01300-APG-NJK |
| Plaintiffs, | **ORDER** |
| v. | (Dkt. #54) |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | |
| Defendants. | |

Plaintiffs J.D.H. and Maria Hernandez move for leave to file a second amended complaint to add claims for negligence and fraudulent misrepresentation. Because the claims are not futile, there is no bad faith, and there is little prejudice to the defendants, I grant the motion.

**I. BACKGROUND**

Plaintiff J.D.H. is the minor child of plaintiff Maria Hernandez. (Dkt. #28 at 2-3.) On July 23, 2011, J.D.H. crossed the street near her house to buy ice cream from an ice cream truck. (*Id.* at 3.) As J.D.H. was preparing to cross the street back toward her house, a Chevrolet Avalanche passed the ice cream truck at a high rate of speed and drove over J.D.H.'s foot, knocking her to the ground. (*Id.* at 6-7.) The driver and passenger of the Avalanche exited the vehicle and the driver apologized, but the passenger became aggressive and blamed J.D.H. for the accident. (*Id.* at 7.) One of Maria's other children ran inside the home to tell her about the accident, and Maria called 911. (*Id.* at 8.) When the Avalanche's occupants learned the police had been called, they fled in their vehicle. (*Id.*)

Defendant police officers J. Barker and M. Purcaro arrived on the scene. (*Id.*) Maria's husband, Inocente, attempted to explain the situation to Barker but Inocente cannot speak English fluently, and neither Barker nor Purcaro speaks Spanish. (*Id.*) The driver and passenger of the Avalanche walked back to the scene and spoke to the officers in English. (*Id.* at 9.) The

1  passenger falsely claimed she was the driver, but the driver eventually admitted he was the one
2  driving at the time of the accident. (*Id.* at 9.)

3  According to the plaintiffs, Barker and Purcaro learned the driver did not have a valid
4  driver's license but they did not check any information about the driver, nor did they check the
5  Avalanche's registration. (*Id.*)  Maria and Inocente tried to get information on the driver,
6  including registration and insurance information, but the officers allegedly told them they could
7  not have that information. (*Id.* at 10.)  Barker and Purcaro also allegedly told Maria and Inocente
8  that they were at fault and refused to help them. (*Id.* at 11.)

9  While the officers were still on the scene, the Avalanche passenger began yelling at
10  Maria, telling her it was her fault and using obscenities. (*Id.*)  Maria responded by telling the
11  passenger that she and the driver would be held accountable. (*Id.*)  According to the plaintiffs,
12  Barker then approached Maria, who was holding J.D.H. at the time, and pushed her back with his
13  forearm. (*Id.*)  Barker allegedly told Maria to "shut up" and that it was her fault the accident had
14  occurred. (*Id.*)  An ambulance arrived, and Maria and J.D.H. got in. (*Id.*)

15  According to plaintiffs, Inocente continued to ask the officers for the driver's information
16  but the officers refused to give him the information and prohibited the plaintiffs from obtaining
17  that information from either the Avalanche driver or the ice cream truck driver. (*Id.* at 11-12.)
18  The officers released the Avalanche driver and passenger from the scene without obtaining any
19  information from them. (*Id.* at 12.)  The officers did not file a report regarding the accident. (*Id.* at
20  13.)  According to the first amended complaint, the officers treated the plaintiffs differently than
21  they would have treated other persons involved in an accident because the plaintiffs are Hispanic
22  and do not speak fluent English. (*Id.* at 10.)

23  Plaintiffs filed this lawsuit against the officers, the Las Vegas Metropolitan Police
24  Department, and Sheriff Douglas Gillespie, asserting claims for equal protection violations, due
25  process violations, excessive use of force, discrimination under 42 U.S.C. § 2000d, battery,
26  assault, and intentional and negligent infliction of emotional distress. (Dkt. #1.)  The plaintiffs
27  filed an amended complaint after the Magistrate Judge ordered the original complaint sealed
28

because it revealed J.D.H.'s full name and birth date in violation of Special Order No. 108. (Dkt. #26, #28.)

I previously dismissed the plaintiffs' claims for due process violations, excessive force, battery, assault, and negligent infliction of emotional distress. (Dkt. #40.) I also dismissed all claims against Sheriff Douglas Gillespie, with leave to amend within 30 days if the plaintiffs could allege facts supporting their claims against him. (*Id.*) Plaintiffs did not file an amended complaint within 30 days.

The plaintiffs now move to amend to add claims for negligence and fraudulent misrepresentation. The defendants oppose on a variety of grounds.

**II. DISCUSSION**

Generally, a plaintiff may amend her complaint "once as a matter of course within . . . 21 days of serving it," or within 21 days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). I consider five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended the complaint. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Delay alone does not suffice to deny amendment, but it is a relevant factor to consider, particularly where the party moving to amend provides no explanation for the delay. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion for failure to state a claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Whether to grant leave to amend lies within my discretion. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

////

**A. Discretionary Immunity**

Defendants contend amendment is futile as to both proposed claims because the defendants are entitled to discretionary immunity under Nevada Revised Statutes § 41.032. However, § 41.032 "does not protect a government employee for intentional torts or bad-faith misconduct, as such misconduct, 'by definition, [cannot] be within the actor's discretion.'" *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014) (en banc) (quoting *Falline v. GNLV Corp.*, 823 P.2d 888, 891-92 (Nev. 1991)). Bad faith "involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity." *Falline*, 823 P.2d at 892 n.3. For example, where an officer acts out of "hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, then the officer's actions are the result of bad faith and he is not immune from suit." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007) (citing *Falline*, 823 P.3d at 892 n.3).

Here, the plaintiffs allege the officers acted out of hostility towards Hispanics and those who cannot speak English fluently. Accepting these allegations as true at this stage of the proceedings, the defendants are not entitled to discretionary immunity.

**B. Bad Faith, Undue Delay, Prejudice, Prior Opportunities to Amend**

The defendants contend I should deny amendment because the plaintiffs have unduly delayed adding claims they knew or should have known about since the inception of the case. The defendants also argue that delay will result in prejudice because they will have to resubmit written discovery. Finally, the defendants argue that the plaintiffs had prior opportunities to amend but failed to add these claims.

There is no evidence of bad faith. There is, however, evidence of undue delay. The plaintiffs have known the facts supporting these claims since the inception of this case and do not offer any explanation for why they waited to add these claims. But delay alone is not a sufficient reason to deny amendment. There is little prejudice to the defendants. Any further written discovery aimed at these two claims would be minimal because they arise out of the same

common core of operative facts as pled in the original complaint. The parties recently stipulated to extend discovery until November 9, 2015, and as of May 4, 2015 the parties had not completed the depositions of the significant witnesses in the case. (Dkt. #76 at 4-5.) Finally, the fact that the plaintiffs previously amended their complaint does not weigh against allowing amendment. The only prior amendment was to redact J.D.H's name and birth date. The plaintiffs were given an opportunity to amend following my dismissal order, but my order only specifically granted leave to amend as to their claims against Sheriff Gillespie. I therefore conclude these factors do not support denying leave to amend. The only question remaining is whether amendment would be futile.

**C. Futility**

*1. Negligence*

The plaintiffs seek to add a negligence claim based on the police officers' alleged failure to complete a police report or to check the registration information of the Avalanche, as well as for their conduct in preventing the plaintiffs from obtaining that information. The defendants respond that I should deny amendment because it would be futile. According to the defendants, the officers owed no duty to the plaintiffs under the public duty doctrine.

Nevada Revised Statutes § 41.0336 codifies the common law public duty doctrine, which provides that the police owe duties to the public generally, not to particular individuals. Under that provision, a law enforcement agency and its officers are not liable for the officers' negligent acts or omissions unless an exception applies. One exception is when the officer's conduct "affirmatively caused the harm." Nev. Rev. Stat. § 41.0336(2). An officer affirmatively causes the harm if he "actively create[s] a situation which leads directly to the damaging result." *Coty v. Washoe Cnty.*, 839 P.2d 97, 99 (Nev. 1992).[1] "[S]tatutes and ordinances can create a special duty

---

[1] In *Coty*, the deputy did not arrest a drunk driver he pulled over for speeding. *Id.* at 97-98. Instead, the deputy arranged for the driver's mother to pick him up, and the deputy then left the driver by the side of the road. *Id.* at 98. After the deputy left, the driver reentered his vehicle and subsequently got in an accident resulting in his death along with the death of another individual. *Id.* The Nevada Supreme Court held that under these circumstances, the public duty doctrine barred the plaintiffs' negligence claims. *Id.* at 99-100. The *Coty* court reached this conclusion even though the deputy violated the sheriff department's internal procedures requiring the deputy to arrest drivers who fail field sobriety tests because

exception to the public duty doctrine" if the statute or ordinance sets forth "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole' . . . ." *Id.* at 99 n.6 (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1314 (D.C. Ct. App. 1983)).

Nevada has not addressed whether the public duty doctrine would bar a plaintiff's negligence claim against police officers based on their failure to collect information at the scene of a car accident or for their conduct in preventing the plaintiffs from collecting that information. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir.2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Id.* (quotation omitted).

Plaintiffs rely on three statutory sections to argue the officers violated a mandatory directive: §§ 484E.030, 484E.060, and 484E.110. When this accident occurred in 2011, neither § 484E.030 nor § 484E.060 imposed a mandatory duty on police officers at the time of the accident. Section 484E.030[2] required drivers in accidents to exchange information, but it imposed no mandatory duty on police officers to collect that information or to share it with others involved in the accident. Section 484E.060(1)[3] required a peace officer at the scene of an

---

it declined to adopt a minority view that internal procedures, as opposed to statutes or ordinances, could create a special duty. *Id.* at 99 n.6.

[2] When the accident occurred in 2011, § 484E.030 provided that "[t]he driver of any vehicle involved in an accident resulting in injury to or death of any person" must provide information to others involved in the accident or to police officers investigating the accident. Nothing in this section mandated a police officer to ask the driver for the required information or to provide that information to others involved in the accident.

[3] When the accident occurred in 2011, § 484E.060(1) required a peace officer to:

> request that the information on file with the Department be checked regarding the validity of the registration for each motor vehicle involved in the accident. If the peace officer is informed that the registration of a motor vehicle involved in the accident has been suspended pursuant to any provision of chapter 485 of NRS, the peace officer shall determine whether the license plates and certificate of registration for the motor vehicle have been surrendered as required by NRS 485.320. If the license plates and certificate have not been surrendered, the peace officer shall:
> (a) Issue a traffic citation in the manner provided in NRS 484A.630 charging the registered owner with a violation of NRS 485.320 and 485.330; and

accident to check whether each vehicle involved in an accident was validly registered and, if not, to issue a citation and impound the car until any defects were cured. But nothing in that statute required a peace officer to provide the other party in the accident with any information obtained from a records check. Nor was that statute clearly for the protection of any particular class of persons as opposed to the public as a whole. To the contrary, the statute was directed at general law enforcement objectives of ensuring vehicles are properly registered and, if not, that the registered owner is cited and the vehicle impounded until any registration violations are cured. It did not create a special duty beyond a police officer's general duty to the public. An officer's alleged failure to comply with these requirements therefore does not create an exception to the public duty doctrine.

As for § 484E.110, in 2011 a written report was required for any accident involving death, bodily injury, or $750 or more in property damage, to be submitted by either the driver or an investigating police officer. *See id.* §§ 484E.070(1)-(2), § 484E.110(1) (2011). If a police officer investigated the accident, he was required to forward a written report of the accident to the Department of Motor Vehicles ("DMV"). *Id.* § 484E.110(1) (2011) (requiring "[e]very police officer who investigates a vehicle accident of which a report must be made as required in this chapter" to "forward a written report of the accident to the Department . . . ."[4]). This report had to be made on the form provided by the DMV and had to contain the information required therein if available. *Id.* §§ 484E.120(1), (3) (2011). The statute thus imposed a mandatory requirement on officers who investigated accidents involving death, bodily injury, or $750 or more in property damage to prepare and submit to the DMV a written report of the accident containing all the

---

   (b) Without a warrant, seize and take possession of the motor vehicle and cause it to be towed and impounded until the owner claims it by:
     (1) Presenting proof that the vehicle's registration has been reinstated by the Department; and
     (2) Paying the cost of the towing and impoundment.

[4] *See* Nev. Rev. Stat. § 481.015(2)(a) (2011) (defining "Department" to mean the Department of Motor Vehicles for Title 43, Chapters 480-490 of the Nevada Revised Statutes).

1  required information, including the identity of the parties involved and information about their
2  insurance to the extent that information was available.

3  However, an exception to the public duty doctrine is triggered only if this mandatory act
4  was clearly for the protection of a particular class of persons rather than for the public as a whole.
5  I agree with the Court of Appeals of North Carolina that "[t]he duty to investigate motor vehicle
6  accidents and to prepare accident reports is a general law enforcement duty owed to the public as
7  a whole," and not to any particular individual. *Inman v. City of Whiteville*, 763 S.E.2d 332, 335-
8  36 (N.C. Ct. App. 2014) (holding public duty doctrine barred a negligence claim based on the
9  responding officer's failure to gather information from a driver who allegedly caused an
10 accident). Consequently, the police officers' alleged failure to prepare a written report as
11 required, standing alone, is insufficient to trigger an exception to the public duty doctrine.

12 But the plaintiffs do not allege only nonfeasance on the part of Barker and Purcaro.
13 Rather, the plaintiffs allege that in addition to failing to gather the information themselves as
14 required, the officers actively prevented the plaintiffs from acquiring that information as well,
15 even though the plaintiffs statutorily were entitled to it. *See* Nev. Rev. Stat. § 484E.010(1) (2011)
16 (requiring a driver involved in an accident to stop at the scene and to fulfill the requirements of
17 § 484E.030); *id.* § 484E.030(1) (2011) (requiring a driver in an accident involving personal injury
18 to give his name, address, and vehicle registration number to any person injured in the accident,
19 and, if asked, to show his driver's license). By both failing to gather the information as statutorily
20 required and by affirmatively preventing the plaintiffs form obtaining that information even
21 though they were statutorily entitled to it, the officers actively created a situation which led
22 directly to the damaging result. The officers did not cause the accident that injured J.D.H., but
23 they created a situation which potentially prevented the plaintiffs from discovering the identity of
24 the person who allegedly harmed J.D.H., thereby potentially depriving the plaintiffs of available
25 legal remedies against that person or his insurer. I predict that under these circumstances, the
26 Nevada Supreme Court would hold that an exception to the public duty doctrine applies. I
27 therefore will grant the plaintiffs leave to amend to add a negligence claim.
28

However, the allegations in the proposed second amended complaint regarding causation and damages appear to be at odds with the plaintiffs' statements in their reply brief. In the proposed second amended complaint, the plaintiffs allege that as a result of the officers' conduct, J.D.H. "cannot obtain any information" about the drivers of the Avalanche and the ice cream truck, and she has thus been "unable to pursue her legal right to attempt to obtain compensation" from the drivers, owners, or insurers of the vehicles. (Dkt. #54 at 24.) But in the reply brief on the motion to amend, the plaintiffs state that "[t]he fact that Plaintiffs later recovered such information does not negate the Officers' violation," and that the officers' conduct "caused harm to Plaintiffs because it significantly delayed their ability to get information they needed to pursue litigation against the Driver." (Dkt. #58 at 5, 9, 10.) Because of these discrepancies, when the plaintiffs file their second amended complaint, they must include in it corrections, if any, of the factual allegations regarding the plaintiffs' ability to obtain information about the owners, drivers, or passengers of the Avalanche and ice cream truck.

### 2. *Fraudulent Misrepresentation*

The plaintiffs seek to add a fraudulent misrepresentation claim. The plaintiffs contend the officers falsely represented to the plaintiffs that they did not have the right to obtain the registration and insurance information of the drivers and owners of the Avalanche and the ice cream truck. The plaintiffs also allege the officers "falsely represented that they could not help MARIA and J.D.H. because they alleged MARIA and J.D.H. were at fault." (Dkt. #54 at 29.)

The defendants argue amendment to add this claim would be futile because the officers had no duty to provide information about the drivers to the plaintiffs and they therefore did not misrepresent their duties under the law. The defendants also assert there is no allegation of reliance. Finally, the defendants argue any fraudulent misrepresentation claim would be time-barred because this claim does not relate back to the original complaint.

To the extent the defendants contend the proposed claim is futile because the officers did not misrepresent their legal duties, I disagree. The proposed claim alleges the officers made a false representation about the plaintiffs' legal right to obtain the information generally, not that

1  they had a legal right to obtain the information from the officers. (*See* Dkt. #54 at 29.)
2  Additionally, it is reasonable to infer from the allegations in the proposed second amended
3  complaint that the plaintiffs at least initially relied on the officers' statements because they did not
4  approach the driver and passenger and attempt to obtain the information on the scene. *See*
5  *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (listing elements of fraudulent
6  misrepresentation claim to include reliance resulting in damages).

7  Finally, the proposed fraudulent misrepresentation claim is not futile as barred by the
8  statute of limitations.  The proposed claim relates back to the original complaint under Federal
9  Rule of Civil Procedure 15(c)(1)(B) because it "arose out of the conduct, transaction, or
10 occurrence set out . . . in the original pleading."  The claim arises from the same "common core of
11 operative facts" involving the officers' conduct during the accident investigation. *ASARCO, LLC*
12 *v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).  The original complaint alleged the
13 defendant officers "told MARIA and Inocente that they could not have information regarding the
14 driver, nor registration and insurance information," and it states that the plaintiffs in fact had a
15 statutory right to that information. (Dkt. #1 at 12, 14.)

16 However, like the negligence claim, the allegations supporting the proposed fraudulent
17 misrepresentation claim are inconsistent with statements in the plaintiffs' reply brief.  For
18 example, the plaintiffs allege in the proposed second amended complaint that "[a]s a result of
19 BARKER's and PURCARO's fraudulent misrepresentation, Plaintiff MARIA did not obtain
20 registration and insurance information about the drivers and owners [of the vehicles] so J.D.H.
21 and MARIA [have] not been able to pursue a lawsuit against the driver of the Chevrolet
22 Avalanche." (Dkt. #54 at 29.)  But in their reply brief, the plaintiffs state that the officers' conduct
23 "resulted in damages to Plaintiffs because the false statements lead to a significant delay in
24 Plaintiffs obtaining the information necessary to pursue legal action." (Dkt. #58 at 10.)  Because
25 of these discrepancies, when the plaintiffs file their second amended complaint, they must include
26 in it corrections, if any, of the factual allegations regarding the plaintiffs' ability to obtain
27 information about the owners, drivers, or passengers of the Avalanche and ice cream truck.
28

## III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for leave to file a second amended complaint **(Dkt. #54) is GRANTED.**

IT IS FURTHER ORDERED that the plaintiffs shall file a second amended complaint within 10 days of entry of this order with corrections, if any, of the factual allegations regarding the plaintiffs' ability to obtain information about the owners, drivers, or passengers of the Avalanche and ice cream truck.

DATED this 12th day of June, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE