UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| J.D.H., a minor, by and through her legal guardian and/or parent INOCENTE DOMINGUEZ; and MARIA HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>Defendants. | Case No. 2:13-CV-01300-APG-NJK<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>ECF No. 99 |

The plaintiffs originally filed this lawsuit against the Las Vegas Metropolitan Police Department ("LVMPD"), Officers J. Barker and M. Purcaro, and Sheriff Douglas Gillespie, asserting a variety of federal and state law claims. ECF No. 1. I previously dismissed the claims for due process violations, excessive force, battery, assault, and negligent infliction of emotional distress. ECF No. 40.[1] I allowed the plaintiffs to amend the complaint to add claims for negligence and fraudulent misrepresentation. ECF No. 77.

Defendants LVMPD, Barker, and Purcaro now move for summary judgment on the plaintiffs' remaining claims for equal protection violations, discrimination under Title VI, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress ("IIED"). The plaintiffs have failed to present sufficient facts to support these claims, or even to create a genuine issue of material fact about them. Therefore, I grant summary judgment in favor of the defendants.

**I.    BACKGROUND**

Plaintiff J.D.H. is the minor child of plaintiff Maria Hernandez and her legal guardian Inocente Dominguez. ECF No. 78 at 2-3. On July 23, 2011, J.D.H. crossed the street near her

---

[1] I also dismissed all claims against Sheriff Gillespie, with leave to amend within 30 days if the plaintiffs could allege facts supporting their claims against him. ECF No. 40. The plaintiffs did not file an amended complaint within 30 days.

house to buy ice cream from an ice cream truck. ECF No. 107 at 27. J.D.H. was accompanied by two of her siblings. *Id.* After buying ice cream, J.D.H. was about to cross the street back toward her house when a Chevrolet Avalanche drove by and ran over her foot, knocking her to the ground. *Id.* at 27-28, 31, 40. One of the children testified that the car was going fast and was close to the ice cream truck when it passed. *Id.* at 39-40. The section of the street where J.D.H. and the other children crossed was not located at an intersection and had no cross-walk or pedestrian right-of-way. *Id.* at 31-32; ECF No. 102 at 110.

At the time J.D.H. was struck, Mr. Dominguez had just pulled into the driveway of their house. ECF No. 104 at 23. He did not witness the accident. *Id.* The driver and passenger of the Avalanche exited the vehicle and the driver told Mr. Dominguez not to call the police. ECF Nos. 103 at 36; 104 at 26, 28-29. When they saw that Mr. Dominguez was calling the police and had taken a photo of their license plate, they got back in their vehicle and drove off. ECF Nos. 103 at 42; 104 at 28-29. They returned on foot a few minutes later after parking the Avalanche a few blocks away. ECF No. 104 at 29.

Ms. Hernandez was in the house when the accident occurred and did not see it. ECF No. 103 at 32. She learned of the accident when one of the children ran into the house and told her J.D.H. had been hurt. *Id.* Upon exiting the home, Ms. Hernandez saw the ice cream truck parked across the street and the driver of the ice cream truck arguing with the driver of the Avalanche. *Id.* at 40; ECF No. 102 at 107. At that time, Mr. Dominguez was carrying J.D.H. in his arms. ECF No. 103 at 35-36.

Metro Officers Barker and Purcaro arrived on the scene soon after the accident. *Id.* at 36, 42. Officer Purcaro spoke to the driver and passenger of the Avalanche and Officer Barker spoke with the plaintiffs. *Id.* at 31-32; ECF No. 106 at 145. The Avalanche driver told Officer Purcaro that as they passed the ice cream truck he heard a scream, he did not see J.D.H. before the accident. ECF No. 106 at 151-153.

Officer Purcaro testified at his deposition that the Avalanche driver seemed shaken up by the accident, while the passenger of the vehicle seemed more defensive. ECF No. 106 at 151-52.

Officer Purcaro also testified that the driver and passenger appeared somewhat threatened because several people present at the scene were yelling at them, many of whom were saying that it was the driver's fault. *Id.* at 151-154.

Officer Purcaro called in the Avalanche's license plates to LVMPD's dispatch. ECF No. 100 at 182. The passenger in the Avalanche was the owner's daughter and the driver was her friend. *Id.* Officer Purcaro testified that he could not remember if the Avalanche driver produced his driver's license. ECF No. 106 at 172. He also stated that the Avalanche driver may have produced an insurance card but that he did not take down the information because he was not preparing an accident report at that time. *Id.*

Officer Barker did not speak Spanish and Mr. Dominguez did not speak English. ECF No. 102 at 93. Officer Barker did not call an LVMPD interpreter to help translate, but rather spoke to Mr. Dominguez through an individual on the scene who was bilingual. *Id.* at 93-94; ECF No. 100 at 185. Officer Barker did not seek assistance from LVMPD's Spanish language interpreters because he thought the people on the scene could translate. ECF No. 102 at 105. He was able to have an uninterrupted dialogue with Mr. Dominguez through the interpreter. ECF No. 100 at 185. Mr. Dominguez asked Officer Barker to write a report indicating that the driver of the Avalanche was at fault. ECF No. 102 at 108-09.

All of the witnesses agreed that J.D.H. had stepped out in front of the ice cream truck and that the Avalanche ran over her foot when it passed by. *Id.* at 182, 185. Officer Barker explained to Mr. Dominguez that any accident report would need to indicate that J.D.H. was at fault because she walked into the street. *Id.* at 186. He testified that to ensure Mr. Dominguez understood, he "went so far as to act out what had happened," and that Mr. Dominguez declined a report after learning that it would indicate J.D.H. was the cause of the accident. *Id.*

Mr. Dominguez testified at his deposition that he asked the officers, through a friend who was interpreting, for paperwork regarding the driver's information but the officers responded that the accident was the plaintiffs' fault. Specifically, Mr. Dominguez testified:

> I remember telling Isidro's son for them – for him to ask of the paperwork to the – to the one who was driving, to ask him for his license, but the police officer said it was my fault. At that point the driver and the woman just left, walked away.

ECF No. 104 at 42.

Ms. Hernandez felt discriminated against when she learned that the officers were not going to write a report stating that the Avalanche driver was at fault and that any report they would write would say her daughter caused the accident. ECF No. 103 at 56. After hearing this, Ms. Hernandez backed away from her husband and the officers and noticed the passenger of the Avalanche was walking back and forth on the sidewalk, looking frustrated. *Id.* Ms. Hernandez states that the female passenger then began yelling at her and screaming obscenities and that Ms. Hernandez responded by yelling "bad words" back at her. *Id.* at 63.

Ms. Hernandez testified at her deposition that at that point Officer Barker approached her and told her to "shut up, it is your fault." *Id.* She states that Officer Barker got upset with her and pushed his arm against her chest, causing her to step back three steps. *Id.* at 63-64. After this altercation, Ms. Hernandez went back into her house with J.D.H. and waited for the ambulance. *Id.* at 64. Officer Barker does not remember this part of the incident. ECF No. 102 at 117.

Mr. Dominguez testified at his deposition that Officer Barker mocked his daughter's injury, pantomimed the accident, and appeared to make fun of Mr. Dominguez. ECF No. 104 at 45. Ms. Hernandez testified that she saw this exchange was well. ECF No. 103 at 61-62.

Officers Purcaro and Barker did not file a report or issue a citation regarding the accident, did not assist in the exchange of information between the driver and the plaintiffs, and did not impound the vehicle. ECF No. 106 at 177-78.

The defendants now move for summary judgment in their favor on all of the plaintiffs' claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery responses, and affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact for trial. It can do this by: (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323–325.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). It "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986).

III. ANALYSIS

A. **Equal Protection and Title VI**

The plaintiffs assert an equal protection claim against all the defendants and a claim against LVMPD for discrimination pursuant to Title VI, 42 U.S.C. § 2000d *et seq*. The defendants argue that there is no evidence that they acted with an intent or purpose to discriminate against the plaintiffs based on their status as non-English speakers or because the

plaintiffs are Hispanic. They also contend that there is no evidence that the plaintiffs were treated differently than others similarly situated. They argue that the plaintiffs' Title VI claim also fails because there is no evidence that LVMPD or its officers intentionally discriminated against the plaintiffs.

In response, the plaintiffs cite the deposition of Officer Barker, in which he testified that it was his typical practice to write incident reports when someone was injured, but that he did not create a report for this accident. ECF Nos. 102 at 47-48; 106 at 177-78. They also cite to the officers' statements that the accident was the plaintiffs' fault and to the plaintiffs' testimony about Officer Barker pushing Ms. Hernandez and making fun of Mr. Dominguez . ECF Nos. 103 at 61-64; 104 at 45. Finally, they cite the testimony of Mr. Dominguez that the officers would not help him obtain information from the Avalanche driver. ECF No. 104 at 42. Taken together, the plaintiffs argue this evidence shows that the defendants discriminated against the plaintiffs and treated them differently because they do not speak English and are Hispanic. The plaintiffs also argue that the officers' failure to obtain a translator denied them meaningful access to LVMPD's services.

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991); *Gutierrez v. Mun. Court of the Southeast Judicial Dist.*, 838 F.2d 1031, 1047 (9th Cir. 1988) (purposeful discrimination is an essential element of an equal protection claim). The plaintiffs have not produced any evidence that the officers acted with the intent to discriminate against them based on their status as non-English speakers or because they are Hispanic.

The testimony the plaintiffs rely on does not create a genuine issue of fact on their equal protection claim. The fact that Officer Barker normally creates police reports for accidents but failed to do so in this case is not evidence of discrimination based on a protected class. There is

<2>
<2>
<2>
<2>
<2>
<2>
<2>
<2>

<2>
<2>

<2>
<2>
<2>
<2>
<2>
<2>
<2>
<2>
<2>

<2>
<2>
<2>
<2>
<2>
<2>
<2>
<2>
<2>

no evidence that Officer Barker did not write a report because the plaintiffs did not speak English or because they are Hispanic. Similarly, the testimony related to the officers' conclusion that J.D.H. was at fault, and Officer Barker's interactions with Ms. Hernandez and Mr. Dominguez, are not sufficient to establish an equal protection violation. There is no evidence that the defendants' actions or comments were motivated by a discriminatory intent towards Hispanics or non-English speakers. Even viewing the facts and making all inferences in the light most favorable to the plaintiffs, there is insufficient evidence to show (or create a material dispute of fact) that the officers violated the plaintiffs' Fourteenth Amendment equal protection rights. I therefore grant summary judgment to the defendants on this claim.

For similar reasons, the plaintiffs' Title VI claim against LVMPD fails. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As a federal fund recipient, LVMPD must ensure meaningful access to its programs and activities by persons with limited English proficiency. *See* 28 C.F.R. § 42.104(b)(2). Meaningful access is not provided when the federal recipient utilizes "criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin...." *Id.*

To state a claim under Title VI, a plaintiff must allege that the entity involved (1) engaged in unlawful discrimination and (2) was receiving federal financial assistance. *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1139 (N.D. Cal. 2000) (citing *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001)). A private individual may bring a private action against government officials under Title VI, but only to the extent that the claim is premised on intentional discrimination. *See* 42 U.S.C. § 2000d–7(a)(1); *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (holding that Section 601 of Title VI, providing that no person shall be subjected to discrimination under any covered program or activity on basis of

race, color, or national origin, prohibits only intentional discrimination).

The plaintiffs have failed to cite any evidence showing intentional discrimination by LVMPD. They argue that the officers failed to call an interpreter to the scene of the accident. But the evidence demonstrates that the officers were able to effectively communicate with the plaintiffs through a bilingual man. ECF No. 102 at 93-94. And even if it is presumed that the plaintiffs were not provided meaningful access to LVMPD's services through an official interpreter, the plaintiffs have provided no evidence that this was due to intentional discrimination by LVMPD or its officers. I therefore grant summary judgment to the defendants on this claim.

### B. Negligence

The plaintiffs claim that the defendants breached their duty to comply with Nevada law and affirmatively caused harm to the plaintiffs by (1) not checking the Avalanche driver's registration information as required by Nevada Revised Statutes ("N.R.S.") § 484E.060(1), and (2) failing to complete a police report of the accident and providing it to the Department of Motor Vehicles ("DMV") as required by N.R.S. § 484E.100. ECF No. 78 at 15-16.

The defendants argue the public duty doctrine bars this claim, and that there is no evidence that the officers actively prevented the plaintiffs from acquiring information. They argue that no witness has testified that the officers prevented J.D.H. or Ms. Hernandez from speaking to or obtaining information from the Avalanche driver or passenger. Further, they submit evidence showing that the plaintiffs obtained the identity of the vehicle's owner and the vehicle's insurance information in August 2011, less than a month after the accident and almost two years prior to the initiation of this lawsuit. ECF No. 100 at 177.

The plaintiffs respond that the public duty doctrine does not bar the claim because the officers "significantly delayed [the plaintiffs'] ability to get information they needed to pursue litigation against the driver." ECF No. 111 at 28-29. They argue that because of the defendants' conduct, they could not obtain any information regarding the driver's information. They assert that while they have obtained some information regarding the owner of the Avalanche, that information did not allow J.D.H. to pursue appropriate legal action because they needed

information about the Avalanche driver, not the owner. *Id.* at 12.

N.R.S. § 41.0336 codifies the common law public duty doctrine, which provides that the police owe duties to the public generally, not to particular individuals. *See Coty v. Washoe Cnty.*, 839 P.2d 97, 98-99 (Nev. 1992) (recognizing § 41.0336 as a codification of *Frye v. Clark Cty*, 637 P.2d 1215 (Nev. 1981), which articulated the common law exceptions to the public duty doctrine). Under § 41.0336, a law enforcement agency and its officers are not liable for the officer's negligent acts or omissions unless the officer made a promise to a plaintiff who relied on the promise, or unless the officer affirmatively caused the plaintiff's injury. An officer affirmatively causes the harm if he "actively create[s] a situation which leads directly to the damaging result." *Coty*, 839 P.2d at 99. Additionally, "statutes and ordinances can create a special duty exception to the public duty doctrine" if the statute or ordinance sets forth "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole' . . . ." *Id.* at 99 n.6 (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1314 (D.C. Ct. App. 1983)).

The Supreme Court of Nevada has not addressed whether the public duty doctrine would bar a plaintiff's negligence claim against police officers based on their failure to collect information at the scene of an accident or for their conduct in preventing the plaintiffs from collecting that information. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted).

When this accident occurred in 2011, N.R.S. § 484E.060 required a peace officer at the scene of an accident to check whether each vehicle involved in an accident was validly registered and, if not, to issue a citation and impound the car until any defects were cured. ECF No. 77 at 6-7. Nothing in the statute required an officer to provide those involved in the accident with any information obtained from the records check. Nor was that statute clearly enacted for the protection of any particular class of persons as opposed to the public as a whole. Thus, it did not create a special duty beyond an officer's general duty to the public. I therefore previously held

that an officer's failure to comply with these requirements does not create an exception to the public duty doctrine. *Id.*

In 2011, N.R.S. § 484E.110 imposed a mandatory requirement on officers who investigated serious accidents to submit to the DMV a written report containing, among other things, the identity of the parties involved and information about their insurance to the extent that information was available. *Id.* at 7-8. In my prior order I held that an officer's failure to prepare such a report did not trigger an exception to the public duty doctrine because this mandatory act was for the protection of the public at large rather than for a particular class of people. *Id.* at 8. I continue to agree with the Court of Appeals of North Carolina that "[t]he duty to investigate motor vehicle accidents and to prepare accident reports is a general law enforcement duty owed to the public as a whole," and not to any particular individual. *Inman v. City of Whiteville*, 763 S.E.2d 332, 335-36 (N.C. Ct. App. 2014) (holding public duty doctrine barred a negligence claim based on the responding officer's failure to gather information from a driver who allegedly caused an accident). Consequently, in this case, the police officers' alleged failure to prepare a written report, standing alone, is insufficient to trigger an exception to the public duty doctrine.

Nevertheless, I allowed the plaintiffs to amend their complaint to add this negligence claim because they had alleged that the officers actively prevented the plaintiffs from acquiring information from the Avalanche driver. I noted that while "[t]he officers did not cause the accident that injured J.D.H., . . . they created a situation which potentially prevented the plaintiffs from discovering the identity of the person who allegedly harmed J.D.H., thereby potentially depriving the plaintiffs of available legal remedies against that person or his insurer." ECF No. 77 at 8. I thus predicted that under these circumstances, the Supreme Court of Nevada would hold that an exception to the public duty doctrine applied in this case.

The defendants now argue that there is no evidence that the officers actively prevented the plaintiffs from obtaining information, and that the plaintiffs did, in fact, obtain information about the vehicle less than a month after the accident. The plaintiffs have offered no evidence refuting this. There is no evidence that the officers actively prevented the plaintiffs from obtaining

information from the Avalanche driver or passenger, and the plaintiffs have failed to demonstrate any damage caused by the officers' failure to submit a report. The officers did not create a situation that prevented the plaintiffs from discovering the identity of the person who allegedly harmed J.D.H. Therefore, the public duty doctrine bars this claim.[2] For these reasons, I grant summary judgment to the defendants on this claim.

### C. Fraudulent Misrepresentation

The plaintiffs claim that the officers falsely represented to them that they did not have the right to obtain the registration and insurance information of the drivers and owners of the Avalanche and ice cream truck. ECF No. 78 at 16-17. The plaintiffs also allege the officers "intentionally falsely represented that they could not help [Ms. Hernandez] and J.D.H. because they alleged [Ms. Hernandez] and J.D.H. were at fault." *Id.* at 17.

The defendants point out that Ms. Hernandez testified at her deposition that the officers never told her that she did not have a right to information and never said they could not help her because she and J.D.H. were at fault. ECF No. 103 at 83. The defendants also cite to J.D.H.'s deposition testimony that she never spoke to the officers. ECF No. 105 at 26.

The plaintiffs counter that Mr. Dominguez testified that he asked the police officers to obtain information from the Avalanche driver but the officer told him that the accident was the plaintiffs' fault. ECF No. 104 at 42. Thus, the plaintiffs contend there are genuine issues of material fact related to this claim.

The elements of a fraudulent misrepresentation claim are: "(1) [a] false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." *Barmettler v. Reno*

---

[2] And because the plaintiffs have failed to submit evidence showing that the officers' conduct actually caused them harm, they have also failed to establish that element essential of their negligence claim.

*Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (citing *Bulbman Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992); *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)).

Both Ms. Hernandez and J.D.H. testified that the officers made no representations to them about their legal rights or the officers' inability to assist them. ECF Nos. 103 at 83; 105 at 26. There is no evidence that either officer told the plaintiffs that they did not have the legal right to the registration and insurance information. There is no evidence that the officers' statements that the plaintiffs were at fault were false or that the officers ever said that they were unable to help the plaintiffs. Although Mr. Dominguez testified that the officer refused to obtain information from the Avalanche driver on his behalf (*See* ECF No. 104 at 42), the refusal to collect information is not a "representation" that could be fraudulent.

Even if the plaintiffs had presented evidence that the officers made false representations, this claim would still fail because the plaintiffs have submitted no evidence showing they were damaged as a result of relying on any such misrepresentation. The plaintiffs obtained the identity of the Avalanche owner and the vehicle's insurance information in August 2011, less than a month after the accident occurred. *See* ECF No. 100 at 177. The plaintiffs offer no explanation how they were nevertheless harmed as a result of the defendants' representations. Where an essential element of a claim for relief is absent, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and summary judgment is proper. *Celotex*, 477 U.S. at 323-24. The plaintiffs have failed to prove the essential element of damages caused by any alleged false representation.

I therefore grant the defendants summary judgment on this claim because, viewing the facts in the light most favorable to the plaintiffs, there is no evidence that defendants made the alleged misrepresentations or that the plaintiffs were harmed.

### D. IIED

The plaintiffs claim that the officers intentionally caused J.D.H. and Ms. Hernandez severe emotional distress. ECF No. 78 at 18-19. The defendants argue that there is no evidence

that the plaintiffs suffered distress and the officers' actions did not rise to the level of extreme or outrageous. They cite to Ms. Hernandez's deposition testimony that she is not claiming she suffered any distress as a result of the incident, and to J.D.H.'s deposition testimony that she could remember very little about the accident and does not remember her foot being run over. ECF Nos. 103 at 88; 105 at 23-24.

The plaintiffs concede that Ms. Hernandez has failed to present sufficient evidence to support an IIED claim. However, they argue that given J.D.H.'s young age at the time of the accident, it is understandable that her recollection of the incident and its effect on her would be diminished. Nevertheless, they contend that J.D.H. suffered extreme emotional distress and that this issue should be left for the jury.

Under Nevada law, an IIED claim requires that the plaintiff prove (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff suffering severe or extreme emotional distress, and (3) actual or proximate causation. *Star v. Rabello*, 625 P.2d 90, 91 (Nev. 1981). The plaintiffs concede that Ms. Hernandez cannot maintain her IIED claim. As to J.D.H., the plaintiffs cite no evidence showing that she suffered any emotional distress as a result of the officers' conduct (different from distress caused by the accident itself). Viewing the evidence in the light most favorable to the plaintiffs, neither Ms. Hernandez nor J.D.H. can maintain her IIED claim. I therefore grant the defendants summary judgment on this claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 99) is GRANTED**. The clerk shall enter judgment in favor of the defendants on all claims asserted in the amended complaint.

DATED this 23rd day September, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE